IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JIMMIE LEE GARRETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CV-99-J-0423-S |
| | ) |
| DEPUTY WARDEN GARRETT, ET AL., | ) |
| | ) |
| Defendants. | ) |

ENTERED

MAR 1 1 2002

MEMORANDUM OF OPINION

This is a civil action filed pursuant to 42 U.S.C. § 1983 in which the plaintiff, Jimmie Lee Garrett, alleges that his constitutional rights were violated while he was incarcerated at St. Clair Correctional Facility in Springville, Alabama. Plaintiff is presently incarcerated at William E. Donaldson Correctional Facility in Bessemer, Alabama. The *pro se* complaint names as defendants Deputy Warden A. L. Garrett, Captain Julian Varner[1], Lieutenant Steve Hicks, Sergeant Earl Pickett[2], Officer Sidney Jackson, Officer Johnny Gladden, Officer James W. Brown and Officer Nash. Plaintiff asserts that he was subjected to unconstitutionally excessive force, in violation of the Eighth Amendment right to be free of cruel and unusual punishment, when he was beaten by Varner, Hicks, Jackson, Gladden, Brown, and Nash. Plaintiff seeks monetary damages.

On October 27, 2000, a magistrate judge entered an Order for Special Report directing that copies of the complaint in this action be forwarded to each of the named defendants and requesting

---

[1] It is noted that defendant Varner was incorrectly identified by plaintiff as Captain Vaugh in his complaint.

[2] The court notes that defendant Pickett's last name was incorrectly spelled by plaintiff in his complaint as Picket.

that they file a special report responding to the factual allegations of the complaint. On December 29, 2000, defendants Garrett, Varner, Hicks, Pickett, Jackson, Gladden, and Brown filed their special report attaching relevant documents and affidavits of the defendants. By Order of August 17, 2001, the parties were notified that the special report filed by defendants Garrett, Varner, Hicks, Pickett, Jackson, Gladden, and Brown would be construed as a motion for summary judgment, and the plaintiff was notified of the provisions and consequences of Rule 56 of the *Federal Rules of Civil Procedure*. Plaintiff did not file a response to the defendants' motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect

to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

## FACTS

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, have been taken in a light most favorable to the plaintiff. On February 19, 1997, after seeing Warden DeLoach from his cell window, plaintiff began calling his name in an effort to get Warden DeLoach's attention (plaintiff's complaint pages four and attached sheet). Plaintiff wanted to tell Warden DeLoach that he was the inmate that Warden DeLoach had previously told to sign up to see the Segregation Review Board, but some unidentified official kept scratching his name off of the list (plaintiff's complaint attached sheet). Plaintiff created a disturbance by tearing his bed apart and beating on his cell door (defendant Varner's affidavit). Plaintiff hit his cell door with a piece of metal taken from the bed (defendant Garrett's affidavit). Plaintiff also knocked the expanded metal covering of the cell door window partially out and broke

the window inside of his cell (defendant Garrett's affidavit, defendant Varner's affidavit, and defendant Hicks' affidavit). An extraction team was formed to remove plaintiff from his cell (defendant Varner's affidavit). Plaintiff was given the opportunity to come out of the cell peacefully or be extracted by force (defendant Varner's affidavit and defendant Hicks' affidavit), and he chose to leave without the use of force. Plaintiff was subsequently handcuffed by defendant Hicks and escorted to the infirmary for a body chart and evaluation (defendant Garrett's affidavit and defendant Gladden's affidavit). Plaintiff was treated for an inch-and-a-half cut on his left pinky finger which resulted from plaintiff cutting himself when he broke the window (defendant Varner's affidavit, defendant Hicks' affidavit, and defendant's Exhibit H, a Department of Corrections Emergency Treatment Record).

## DISCUSSION

### DEFENDANT OFFICER NASH

By Order entered December 20, 2000, plaintiff was advised that the court's Order for Special Report sent to defendant Officer Nash had been returned to the court with the notations "Refused", "Returned to Sender", and "No longer Employed." Plaintiff was directed to supply the court with the correct service address for defendant Officer Nash and was notified that failure to provide the address would result in the dismissal of defendant Officer Nash from this action. Plaintiff has not supplied the correct address to the court, and Nash has never been notified of the filing of this action. By separate order, the complaint will be dismissed without prejudice with respect to Officer Nash.

STATUTE OF LIMITATIONS

The defendants contend that the claims raised in this action are barred by the two-year statute of limitations applicable to § 1983 actions in Alabama. In *Owens v. Okure*, 488 U.S. 235, 236, 249-50 (1989), the United States Supreme Court held that the proper statute of limitations for a § 1983 action is the forum state's general or residual statute of limitations for personal injury actions. The residual statute of limitations in Alabama is two years. ALA. CODE § 6-2-38(l).[3] Plaintiff's cause of action against the defendants arose on February 19, 1997; he therefore had until February 19, 1999 to file a § 1983 action.

Because prisoners proceeding *pro se* have virtually no control over the mailing of their pleadings, their pleadings are deemed to be filed at the time the prisoner delivers the pleading to prison or jail officials to be mailed. *See Houston v. Lack*, 487 U.S. 266, 270-72 (1988). When, as in this case, the record contains no information regarding the date plaintiff gave his complaint to prison officials to mail, the court looks to the date on which the plaintiff signed his complaint. In this case, the plaintiff's complaint was not signed and dated when it was filed in this court. The court subsequently ordered plaintiff to sign and date a copy of the complaint which was enclosed with the Order and to return the signed copy to the court within the time allotted (document number 3). Plaintiff complied with the court's Order (document number 8). Since plaintiff failed to sign the complaint prior to initially mailing it to the court[4], the court looks to the date on which plaintiff

---

[3] Section 6-2-38(l), ALA. CODE, provides: "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."

[4] The subsequent signing of the complaint corrected the defect in it, so that it relates back to the date of "filing" of the original, unsigned complaint. Adams v. Perloff Bros., Inc., 784 F.Supp. 1195 (E.D.Pa. 1992).

5

signed his application to proceed *In Forma Pauperis* which was received in the same envelope as plaintiff's original complaint. Plaintiff signed the application to proceed *In Forma Pauperis* on February 17, 1999. The court notes further that plaintiff's prison account balances were verified by an authorized officer of the institution in which he was incarcerated on February 17, 1999. The court therefore deems plaintiff's complaint to have been filed on February 17, 1999. As plaintiff had until February 19, 1999 to file his claims, his claims are not barred by the statute of limitations.

OFFICIAL CAPACITIES

Plaintiff sued the defendants in their official capacities; however, they are employees of the State of Alabama and cannot be held liable in damages, in their official capacities, for their own acts or those of their employees because they enjoy Eleventh Amendment immunity. Such officers are entitled to dismissal of any claims for damages brought against them in their official capacities as State officials. The United States Supreme Court has stated:

> [T]here can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed.2d 389 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed.2d 268 (1937). Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, § 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity."

*Alabama v. Pugh*, 438 U.S. 781 (1978); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). To the extent they are sued in their official capacities, the suit against the defendants

is a suit against the State. There has been no consent or waiver in this action; thus, the defendants, in their official capacities, are absolutely immune from damages liability in this action.

DEFENDANTS GARRETT AND PICKETT

The court notes at the outset that plaintiff failed to state how either defendant A. L. Garrett or defendant Earl Pickett were involved in the alleged violations of his constitutional rights. Plaintiff failed to even mention defendant Garrett or defendant Pickett in the Statement of Claim section of his complaint. Plaintiff does not allege that defendant Garrett or defendant Pickett took part in any of the alleged constitutional violations. Plaintiff simply attempts to implicate defendant Garrett and defendant Pickett through the concept of *respondeat superior*. However, *respondeat superior* is not available to a plaintiff under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Absent some allegation that defendant Garrett or defendant Pickett knew of, sanctioned, participated in or were otherwise "affirmatively linked" to the acts here complained of, the complaint is insufficient to state a cause of action under 42 U.S.C. § 1983. *See Gilmere v. City of Atlanta*, 774 F.2d 1495 (11th Cir. 1985) *cert. denied*, 476 U.S. 1115 (1986). Defendant A. L. Garrett and defendant Earl Pickett are, therefore, entitled to summary judgment.

EXCESSIVE USE OF FORCE

In his complaint, plaintiff claims that on February 19, 1997, after seeing Warden DeLoach from his cell window, he began calling Warden DeLoach's name in an attempt to get his attention. Plaintiff claims that he wanted to speak with Warden DeLoach so he could tell him that he was the inmate that Warden DeLoach told to sign up to see the Segregation Review Board, but that although

he signed up to see the board, some official whom plaintiff failed to identify kept scratching his name off of the list. Plaintiff claims that as he yelled at Warden DeLoach, defendants Varner, Hicks, Jackson, Gladden, Brown and Nash went into the cubicle and put on riot gear. He claims that defendants Varner, Hicks, Jackson, Gladden, Brown and Nash then came into his cell, beat him with sticks and called him names. Plaintiff claims that defendants Varner, Hicks, Jackson, Gladden, Brown and Nash beat him so badly that head injuries he sustained during the beating had not healed when he filed this action. Plaintiff contends that the beating violated his rights to equal protection and due process and to be free from cruel and unusual punishment. Plaintiff claims that following the beating, he was taken to the prison hospital where the nurses were instructed by defendant Hicks to write that he was alright even though it was obvious that his head was "burst" open.

In their sworn affidavits, however, the defendants contend otherwise. In their sworn affidavits, the defendants states that on February 19, 1997, plaintiff displayed disruptive behavior inside of his cell by hitting the cell door with a piece of metal taken from his bed, knocking the expanded metal covering partially out of the window in his cell door and breaking the window. An extraction team was formed to remove plaintiff from his cell. Plaintiff was given the opportunity to come out of the cell peacefully or be extracted by force, and he chose to come out of his cell without any force being used. Plaintiff was subsequently handcuffed by defendant Hicks and escorted to the infirmary for a body chart and evaluation. The Institutional Incident Report submitted by the defendants as evidence reflects that no physical force was used during the course of the incident. The body chart submitted by the defendants as evidence shows that plaintiff sustained a cut approximately one and a half inches long to his left pinky finger.

8

The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Supreme Court held in *Hudson v. McMillian*, 112 S. Ct. 995 (1992), that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 112 S. Ct. at 999. In extending *Whitley* to all cases involving allegations of force, the Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that " `[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' "

*Id.* at 998-9 (citations omitted). With these concerns in mind, the Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary. They include: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the injury suffered by the inmate. The *Hudson* Court made it clear that the extent of injury suffered by the inmate is only one of the many factors which should be considered, not a decisive one when it said, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.* at 999.

After a careful review of the complaint filed by plaintiff and the special report filed by the defendants, it is the opinion of the court that there is no <u>genuine</u> issue of material facts in dispute regarding plaintiff's claim that defendants Varner, Hicks, Jackson, Gladden, Brown and Nash used excessive force upon him on February 19, 1997. In determining what facts are undisputed, the court must begin with those specifically and expressly stated by the plaintiff. But, the process does not end there. In addition to the facts stated by the non-moving plaintiff, the court must also take into account those facts stated by the defendants which are not disputed by the plaintiff. Facts submitted by the defendants and not expressly disputed by the plaintiff cannot be ignored in the summary judgment calculus because they too exist as "undisputed" facts. As the Supreme Court explained in *Celotex*, the ultimate burden is on the plaintiff to come forward with evidence supporting each element of his claim. Because the burden of proof in the lawsuit is on the plaintiff, he may not merely rest upon conclusory or vague pleadings, but must affirmatively rebut evidentiary matters offered by the defendants which, if left undisputed, show that the plaintiff is not entitled to recover in the action.

  In their sworn undisputed affidavits, the defendants state that although an extraction team was formed after plaintiff created a disturbance in his cell in an effort to attract Warden DeLoach's attention on February 19, 1997, no force was used to remove plaintiff from his cell. The defendants state further in their undisputed affidavits that plaintiff was given the choice to either come out of his cell peacefully or be extracted by force. In their undisputed affidavits, the defendants state that plaintiff choose to come out of his cell without any force being used. According to the undisputed affidavits of the defendants, when he emerged from his cell, plaintiff had a cut on his left pinky finger which was caused when he broke the window in his cell. Further, in support of their

affidavits, the defendants submitted as evidence documents which were completed on the day of the incident. The defendants submitted an Institutional Incident Report and an Emergency Treatment Record (body chart) as evidence. The undisputed incident report reveals that when the extraction team arrived at plaintiff's cell to remove him, plaintiff put his hand out to be handcuffed (incident report page one). The incident report reveals that defendant Hicks cuffed plaintiff, put leg irons on him and then escorted him out of the block. The undisputed report indicates that no force was used. The undisputed Emergency Treatment Record reveals that upon arrival at the infirmary following the incident in question, medical personnel observed that plaintiff had a cut which was approximately one and a half inches long on his left pinky finger. Medical personnel observed that there was no swelling or skin discoloration and no immediate distress. Plaintiff's wound was cleaned with hydrogen peroxide and a Band-Aid was applied to cover the cut.

      The court notes that although plaintiff was given the opportunity to respond to the defendants' motion for summary judgment (document number 21), plaintiff failed to respond. Plaintiff failed to dispute the facts presented by the defendants in their sworn affidavits and failed to dispute the facts presented in the incident report and the body chart. As previously noted, because the burden of proof in the lawsuit is on the plaintiff, he may not merely rest upon conclusory or vague pleadings, but must affirmatively rebut evidentiary matters offered by the defendants which, if left undisputed, show that the plaintiff is not entitled to recover in the action. Plaintiff has failed to rebut the evidentiary matters offered by the defendants. Therefore, the defendants are entitled to summary judgment.

      Even if the court accepts the plaintiff's evidence that he was forcefully extracted from his cell, he has not disputed the evidence that he was creating a disturbance that required action by prison

officials to prevent him from continuing to damage his cell. The degree of force appears to be measured and reasonable, with the plaintiff suffering only a minor cut on his finger. Thus, even the use of force here was justified and reasonable, not excessive in violation of the Eighth Amendment.

EQUAL PROTECTION

Plaintiff claims that his right to equal protection of the law was violated in connection with this incident. Plaintiff's generalized claim of prejudice, or discrimination, does not state a claim in violation of the equal protection clause of the Constitution. In *Oyler v. Boles*, 368 U.S. 448, 456 (1962), the United States Supreme Court indicated that to show a constitutional violation there must be a showing of selection deliberately "based upon an unjustifiable standard such as race, religion or other arbitrary classification." The mere allegation that "the force used was unnecessary and excessive in violation of [his] equal protection, civil right" does not show any deliberate action against plaintiff by defendants based upon an unjustifiable standard. The defendants are entitled to summary judgment on this claim.

FOURTEENTH AMENDMENT DUE PROCESS CLAIM

Plaintiff claims that the defendants violated his Fourteenth Amendment right to due process of law. The defendants are entitled to summary judgment with respect to this claim because plaintiff has failed to state a claim upon which relief may be granted. Plaintiff has failed to state any facts to support his claim. Plaintiff's allegations are vague and conclusory, *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984), and without factual basis, *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976). Further, as noted above, it is the Eighth Amendment prohibition against cruel and unusual

punishment which is triggered when a prisoner is subjected to an unnecessary and wanton infliction of pain.

FALSE INFORMATION

     Further, plaintiff claims that although he was taken to the prison hospital after he was removed from his cell, defendant Hicks instructed unidentified nurses to write that he was all right even though his head was obviously injured. In his sworn affidavit, defendant Hicks states that neither he nor anyone else instructed medical personnel to falsify documents. In support of his affidavit, defendant Hicks has submitted as evidence the body chart which was completed when plaintiff was taken to the infirmary. As previously noted, the body chart reveals that upon plaintiff's arrival at the infirmary, medical personnel observed that plaintiff had a cut which was approximately one and a half inches long on his left pinky finger. The undisputed evidence also reveals that medical personnel observed that there was no swelling or skin discoloration and no immediate distress. Defendant Hicks stated in his sworn affidavit that plaintiff received the cut on his finger when he broke the window in his cell door not from any force used by the defendants. Although given the opportunity, plaintiff has failed to dispute this evidence.

     In addition, it is not clear what constitutional right plaintiff is contending was violated by defendant Hicks. Plaintiff does not contend that he was denied medical treatment nor does he state how allegedly instructing the nurses to write that he was alright violated his constitutional rights. This claim is due to be dismissed because plaintiff's allegations are vague and conclusory, *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984), and without factual basis, *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976). In accord with the above, defendant Hicks is entitled to summary judgment

with respect to plaintiff's claim that he instructed unidentified nurses to write that plaintiff was alright.

The Court EXPRESSLY FINDS that there are no genuine issues of material fact and that defendants Garrett, Varner, Hicks, Pickett, Jackson, Gladden, and Brown are entitled to judgment as a matter of law. Accordingly, for the reasons stated above, defendants Garrett, Varner, Hicks, Pickett, Jackson, Gladden, and Brown's motion for summary judgment is due to be GRANTED and this action against defendants Garrett, Varner, Hicks, Pickett, Jackson, Gladden, and Brown DISMISSED WITH PREJUDICE.

A separate final judgment consistent with this Memorandum of Opinion will be entered contemporaneously herewith.

DATED this _11_ day of _March_, 2002.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE